UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LABORERS LOCAL 100 AND 397 PENSION FUND,  :
On behalf of Itself and All Others Similarly Situated,  :
                                                        :
                              Plaintiffs,               :     **OPINION & ORDER**
                                                        :
         - against -                                    :
                                                        :
BAUSCH & LOMB INC., RONALD L. ZARELLA,                  :     06 Civ. 1942 (HB)
STEPHEN C. MCCLUSKI, JOHN M. LOUGHLIN,                  :
DWAIN L. HAHS, ANGELA J. PANZARELLA,                    :
ROBERT B. STILES, KAMAL SARBADHIKARI,                   :
GEOFFREY F. IDE, and WILLIAM H. WALTRIP,                :
                                                        :
                              Defendants.               :
------------------------------------------------------------------x
JAMES BRANNON, Individually and On Behalf of            :
All Others Similarly Situated,                          :
                                                        :
                              Plaintiffs,               :
                                                        :     06 Civ. 2025 (HB)
         - against -                                    :
                                                        :
BAUSCH & LOMB INC., RONALD L. ZARELLA,                  :
STEPHEN C. MCCLUSKI, JOHN M. LOUGHLIN,                  :
DWAIN L. HAHS, ANGELA J. PANZARELLA,                    :
ROBERT B. STILES, KAMAL SARBADHIKARI,                   :
GEOFFREY F. IDE, and WILLIAM H. WALTRIP,                :
                                                        :
                              Defendants.               :
------------------------------------------------------------------x
FRED BADARACCO, Individually and On Behalf of           :
All Others Similarly Situated,                          :
                                                        :
                              Plaintiffs,               :
                                                        :     06 Civ. 2659 (HB)
         - against -                                    :
                                                        :
BAUSCH & LOMB INC., RONALD L. ZARELLA,                  :
STEPHEN C. MCCLUSKI, JOHN M. LOUGHLIN,                  :
DWAIN L. HAHS, ANGELA J. PANZARELLA,                    :
ROBERT B. STILES, KAMAL SARBADHIKARI,                   :
GEOFFREY F. IDE, and WILLIAM H. WALTRIP,                :
                                                        :
                              Defendants.               :
------------------------------------------------------------------x

```
------------------------------------------------------------x
DIANE JOHNSON, On Behalf of Herself and All     :
Others Similarly Situated,                      :
                            Plaintiffs,         :
                                                :   06 Civ. 2916 (HB)
            - against -                         :
                                                :
BAUSCH & LOMB INC., RONALD L. ZARELLA,          :
STEPHEN C. MCCLUSKI, JOHN M. LOUGHLIN,          :
DWAIN L. HAHS, ANGELA J. PANZARELLA,            :
ROBERT B. STILES, KAMAL SARBADHIKARI,           :
GEOFFREY F. IDE, PAUL A. FRIEDMAN,              :
JONATHAN S. LINEN, DAVID NACHBAR, THE           :
BAUSCH & LOMB EMPLOYEE BENEFITS                 :
ADMINISTRATION COMMITTEE, and JOHN              :
DOES 1-30,                                      :
                                                :
                            Defendants.         :
------------------------------------------------------------x
GAETANO RAINONE, Derivatively On Behalf of      :
BAUSCH & LOMB INCORPORATED,                     :
                                                :
                            Plaintiffs,         :
                                                :
                                                :   06 Civ. 2918 (HB)
            - against -                         :
                                                :
RONALD L. ZARELLA, WILLIAM H. WALTRIP,          :
WILLIAM M. CARPENTER, STEPHEN C.                :
MCCLUSKI, JOHN M. LOUGHLIN, DWAIN L.            :
HAHS, ANGELINA J. PANZARELLA, ROBERT B.         :
STILES, KAMAL K. SARBADHIKARI,GEOFFREY          :
F. IDE, RUTH R. MCMULLIN, KENNETH L.            :
WOLFE, LINDA JOHNSON RICE, JONATHAN S.          :
LINEN, DOMENICO DE SOLE, BARRY W.               :
WILSON, PAUL A. FRIEDMAN, ALAN M.               :
BENNETT, JOHN R. PURCELL, FRANKLIN E.           :
AGNEW, and ALVIN W. TRIVELPIECE,                :
                                                :
                            Defendants.         :
            - and -                             :
                                                :
BAUSCH & LOMB INCORPORATED, a New York          :
corporation,                                    :
                                                :
                            Nominal Defendant.  :
------------------------------------------------------------x
```

```
------------------------------------------------------------x
PERRY BROWN, Derivatively On behalf of          :
BAUSCH & LOMB INCORPORATED,                     :
                                                :
                              Plaintiffs,       :
                                                :      06 Civ. 3106 (HB)
          - against -                           :
                                                :
RONALD L. ZARELLA, WILLIAM H. WALTRIP,           :
WILLIAM M. CARPENTER, STEPHEN C.                :
MCCLUSKI, JOHN M. LOUGHLIN, DWAIN L.            :
HAHS, ANGELINA J. PANZARELLA, ROBERT B.         :
STILES, KAMAL K. SARBADHIKARI, GEOFFREY         :
F. IDE, RUTH R. MCMULLIN, KENNETH L.            :
WOLFE, LINDA JOHNSON RICE, JONATHAN S.          :
LINEN, DOMENICO DE SOLE, BARRY W.               :
WILSON, PAUL A. FRIEDMAN, ALAN M.               :
BENNETT, JOHN R. PURCELL, FRANKLIN E.           :
AGNEW, and ALVIN W. TRIVELPIECE,                :
                                                :
                              Defendants.       :
          - and -                               :
                                                :
BAUSCH & LOMB INCORPORATED, a New York          :
corporation,                                    :
                                                :
                    Nominal Defendant.          :
------------------------------------------------------------x
POLICE AND FIRE RETIREMENT SYSTEM OF            :
THE CITY OF DETROIT, On Behalf of Itself and All :
Others Similarly Situated,                      :
                              Plaintiffs,       :
                                                :      06 Civ. 3653 (HB)
          - against -                           :
                                                :
BAUSCH & LOMB INC., RONALD L. ZARELLA,          :
STEPHEN C. MCCLUSKI, JOHN M. LOUGHLIN,          :
ROBERT B. STILES, KAMAL SARBADHIKARI, and       :
GEOFFREY F. IDE,                                :
                                                :
                              Defendants.       :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:**[1]

Plaintiffs in the above captioned cases filed several class action lawsuits that allege securities laws violations against Bausch & Lomb and its corporate officers (collectively "Defendants"). Lead plaintiff motions were filed by four parties in this action on May 12, 2006. Shortly thereafter, on May 15, 2006, the Defendants moved to transfer venue, pursuant to 28 U.S.C. § 1404(a), of the above-captioned cases from this Court to the United States District Court in the Western District of New York. I stayed my decision on a lead plaintiff pending the decision on this motion to transfer venue. For the reasons below, the motion to transfer venue is GRANTED.

## I. BACKGROUND

Plaintiffs' allegations, are in the main, concerned with what might be characterized as misleading press releases. The flavor of these allegations, while not pivotal to this motion, is captured by the following examples.

On January 27, 2005, Bausch & Lomb (also "Company") issued a press release that announced its financial results for 2004. This press release reported an 11 percent increase in worldwide sales to $2.23 billion and full-year earnings of $2.93 per share. The press release provided in relevant part that:

> We surpassed the earnings per share expectations that we established at the beginning of the year and exited 2004 with increased momentum. We are well positioned for accelerated sales growth and continued strong financial performance in 2005.

(Brannon Compl. ¶ 27). A few months later and on April 19, 2005, the Company issued another press release entitled "Bausch & Lomb Reports Solid First Quarter." The April 19, 2005 press release reported a six percent increase in total sales, which resulted in a 47 percent increase in earnings per share to $0.63, compared to $0.43 earnings per share in the first quarter of 2004. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 27; Brannon Compl. ¶ 32). The stock price hovered between $75 and $76 per share in the days following this announcement. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 34). Again on July 27, 2005, a press release entitled "Bausch & Lomb Earns 81 Cents Per Share on Seven-Percent Sales Gain Company Increases Full-Year Guidance by five Cents" surfaced that provided in relevant part that:

---

[1] William Pollack, a Summer 2006 intern in my Chambers and second-year law student at the University of Michigan School of Law, provided substantive assistance in the research for this Opinion.

> We were very satisfied with our second-quarter performance . . .
> further share gains are expected to accelerate top-line growth in the
> second half of 2005.

(Id. ¶ 28) On August 1, 2005, the Defendant's stock sold at $84 a share. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 34; Brannon Compl. ¶ 53).

It was only later that year that Bausch & Lomb acknowledged internal accounting errors at two of their foreign subsidiaries. Specifically, on October 26, 2005, the Company announced that in September 2005 they had begun an internal investigation of their Brazilian subsidiary. This investigation had unearthed several accounting errors. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 29, Brannon Compl. ¶ 37). As a result of these errors, the Brazilian tax authorities claimed that Bausch & Lomb owed the Brazilian government $5 million in taxes as well as $21 million in penalties. (Brannon Compl. ¶ 37). Upon release of this news, shares of Bausch & Lomb fell $2.74 per share to close at $71.36 per share. (Id. ¶ 38). However, Plaintiffs allege that the Company's press release downplayed the seriousness of the accounting errors and as a result, Bausch & Lomb shares rebounded soon thereafter and sold at around $80 a share in December 2005. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 31).

On December 22, 2005, Defendants issued a press release that informed its stockholders of the Company's need to restate financial results for 2000 through the second quarter of 2005 in order to account for the misfeasance and mistakes of its Brazilian subsidiary. (Id. ¶ 32). This press release also announced the investigation of Bausch & Lomb's Korean subsidiary for improper sales and accounting practices. In response to these revelations, Bausch & Lomb shares fell from $79.07 to $67.20. ( Id. ¶ 33). Plaintiffs further allege that throughout this period, the individual defendants' engaged in insider trading and thus, profited enormously from the artificially inflated stock price that resulted from their previous misstatements and non-disclosures. (Laborer's Local 100 & 397 Pension Fund Am. Compl. ¶ 34; Brannon Compl. ¶ 53).

In addition, the consolidated securities class action cases, Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb, the related case, Police and Fire Retirement Sys. of Detroit v. Bausch & Lomb, Inc, and the ERISA case, Johnson v. Bausch & Lomb, include allegations that the Defendants concealed reports that the Company's contact lens solution, ReNu, had been associated with a high incidence of a potentially-blinding eye infection, fusarium keratitis. According to these complaints, as early as July 2005, Defendants received at least five reports of

fusarium keratitis eye infections in consumers that used their product. (Johnson Am. Compl. ¶ 98).

On Feb 21, 2006 the Singapore Ministry of Health issued a press release identifying 39 cases of fusarium keratitis eye infections, 34 of which were diagnosed in ReNu users. (Johnson Am. Compl. ¶ 101). Soon thereafter, Bausch & Lomb suspended sales of ReNu in Singapore. (Id.).

Plaintiffs allege that despite the reports from Singapore, Defendants continued to market ReNu as a safe product in the United States and deny that it was a risk factor for fusarium keratitis. (Id. ¶ 102). On March 8, 2006, the Centers for Disease Control and Prevention ("CDC") launched an investigation into fusarium keratitis cases in the United States. (Id. ¶ 103). Plaintiffs claim that the Defendants continued to downplay the seriousness of these reported eye infections and did not suspend sales of ReNu in the United States until April 10, 2006. (Id. ¶ 109). Once the Company announced that this, Bausch & Lomb's stock price fell approximately $12 a share in two days and closed, on April 12, 2006, at $45.61 per share. (Id. ¶ 110).

## II. PROCEDURAL HISTORY

On March 13, 2006, Laborers Local 100 and 397 Pension Fund filed the first class action lawsuit against Bausch & Lomb pursuant to the Securities Exchange Act of 1934, §§10(b) and 20(a) as well as Rule 10b-5 in the Southern District of New York ("SDNY"). The Complaint alleged that Bausch & Lomb, along with present and former officers and directors of the Company, made materially false and misleading statements when they failed to disclose problems with the Brazilian and Korean subsidiaries, and thus, artificially inflated the stock price. The Complaint was later amended on May 5, 2006 to enlarge the relevant class period to include allegations that the Defendants failed to disclose reports that one of its contact lens products, ReNu, may cause eye infections among its users.

The class was noticed pursuant to the Private Securities Litigation Reform Act ("PSLRA") and lead plaintiff motions were due on May 12, 2006. Four lead plaintiff motions were filed with this Court.

In the interim, six other cases have been filed in the SDNY that allege securities laws violations based on the same or substantially similar events. On consent of the parties, two of those cases, Brannon v. Bausch & Lomb, Inc. and Badaracco v. Bausch & Lomb, Inc., were consolidated with Local 100 and 397 Pension Fund v. Bausch & Lomb by Order issued on April 21, 2006. These cases allege that Bausch & Lomb made false representations about the financial

6

health of the Company and failed to disclose that the Company's Brazilian and Korean subsidiaries were engaged in fraudulent accounting practices. The Order provides that 30 days after appointment of lead plaintiff, the lead plaintiff shall file a Consolidated Complaint. Consolidated Order, ¶ 5. Furthermore, all other cases that arise out of the same or substantially the same events shall be governed by the Consolidated Order. Consolidated Order, ¶ 7.

I accepted the remaining cases. They were clearly related and mine was the lowest docket number.

At a pre-trial conference on May 16, 2006, where counsel for all plaintiffs and defendants were present, the parties agreed to an expedited briefing schedule with regard to the Defendants' motion to transfer venue of these cases to the Western District of New York ("WDNY").[2] Fully briefed motions were due in chambers by May 26, 2006.

### III. DISCUSSION

Defendants have filed three transfer of venue motions – one with regard to the ERISA action, another with regard to the two securities derivative actions, and the last with regard to the three consolidated securities fraud actions. Since the facts are substantially similar in all of these cases, all three transfer motions are analyzed together.

Pursuant to 28 U.S.C. § 1404(a), district courts may transfer a civil case to another district if transfer would be in the interest of justice and benefit "the convenience of the parties and witnesses." The decision to transfer a case is within the discretion of the district judge. See also In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court."). Courts make a case-by-case determination based on the particular facts of the case and no single factor is determinative. See Red Bull Assocs. v. Best Western Intern, Inc., 862 F.2d 963, 967 (2d Cir. 1988) (stating that district courts have "considerable discretion … to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'").

A two-step inquiry is required. First, courts establish whether the case could have been filed in the transferee district and if so, determine whether convenience and the interests of justice favor transfer. See, e.g., Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F.Supp.2d 370, 373 (S.D.N.Y. 2006). Courts consider the following in making this determination: 1)

---

[2] At this time, Defendants had only moved to transfer cases in the consolidated securities class actions but had expressed, both prior to and during the conference, their intent to transfer all cases in front of me to the WDNY.

7

plaintiff's choice of forum, 2) location of operative facts, 3) convenience of parties and witnesses, 4) location of documents and ease of access to sources of proof, 5) relative means of the parties, 6) forum's familiarity with the governing law, 7) trial efficiency, and 8) interests of justice. Id.

The plaintiff's choice of forum is generally respected, unless the balance of factors clearly favors transfer. See, e.g., Royal & Sunalliance v. British Airways, 167 F.Supp.2d 573, 576 (S.D.N.Y. 2001) (internal citation omitted). The defendant bears the burden of demonstrating that transfer is appropriate. See, e.g., Toy Biz, Inc. v. Centuri Corp., 990 F.Supp.328, 330 (S.D.N.Y. 1998).

*A. Proper Transferee Forum*

At the outset, the parties do not dispute that these cases could have been properly brought in the Western District of New York. Pursuant to 15 U.S.C. § 78aa, venue is proper in securities cases in the district "wherein the defendant is found or is an inhabitant or transacts business." The same standard applies in ERISA actions. See 28 U.S.C § 1132(e)(2) (stating that an ERISA action can be brought in the district "where a defendant resides or may be found."). Defendant Bausch & Lomb is headquartered in Rochester, New York, which is in the jurisdiction of the WDNY.

*B. Transfer Factors*

Thus, this motion turns on whether convenience and the interests of justice warrant transfer of all of these cases to the WDNY.

As a preliminary matter, it is beyond peradventure that it is significantly more efficient to try all of these cases together. Although the complaints allege violations of different laws, they all deal with the same or substantially the same events. None of the parties dispute this point, as all of the plaintiffs with cases in the SDNY have agreed to try their cases in front of one Judge. Further, the defendants have never suggested they would prefer to try these cases in separate districts and, indeed, have moved to transfer all of the cases to the WDNY.

*1. Plaintiff's Choice of Forum*

It is well-established that a plaintiff's forum choice should not be disturbed "unless the balance of factors weighs strongly in favor of transfer." Caville v. Malibu Toys, Inc., 2004 WL 1516799, * (S.D.N.Y. July 7, 2004). Defendants argue, however, that courts have accorded "little weight" to plaintiff's choice of forum in securities class actions, due in large part to the distribution of numerous plaintiffs across several districts in these cases. See, e.g. In re

8

AtheroGenics Sec. Litigation, 2006 WL 851708, at *3.

Whether that's so or not here, the other factors are persuasive. For instance, neither the defendants nor the name plaintiffs, with the exception of the two plaintiffs in the derivative actions, reside in SDNY. The Company maintains no offices or employees in the SDNY and the Company's auditors, PricewaterhouseCoopers, are not here either. And even in the case of the derivative plaintiffs that reside here, their district of residence is not persuasive since those claims are brought on behalf of the Company, which is headquartered in the WDNY.

Further, the contacts between the SDNY and the events underlying plaintiffs' allegations are also limited. Courts have accorded less deference to a plaintiff's choice of forum if the case lacks material or significant contacts with that forum. See, e.g., Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203, 210 (S.D.N.Y. 1998). Plaintiffs do not allege, nor can they, that any of the allegedly false or misleading statements were issued from anywhere within this forum. Although Plaintiffs correctly point out that Bausch & Lomb's stock is traded on the New York Stock Exchange ("NYSE"), which is located in the SDNY, and many of the analysts who follow Bausch & Lomb stock are located in New York City, these contacts don't do it. If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street.

For these reasons, I accord less deference to the plaintiff's choice of forum in this case.

2. *Location of Operative Facts*

Plaintiffs argue that this factor does not support transfer because the events underlying these cases occurred all over world. I disagree.

No one disputes that the key facts in this case involve the allegedly false and misleading statements issued by the Company from their Rochester headquarters. Plaintiffs concede as much. See Diane Johnson Memorandum of Law in Opposition at 6 ("In this case, the operative events at issue will be the false and misleading statements made by the Company."); See also Gaetano Rainone Memorandum of Law in Opposition at 4 ("Although many of the operative facts giving rise to this litigation emanate from Bausch & Lomb's corporate headquarters in Rochester, New York, the Western District of New York is not the "center of gravity" as the Defendants would have this Court believe.").

Courts in this District have found that in securities fraud cases, misrepresentations and omissions are deemed to occur in the district from which they are transmitted or withheld, not where they are received. In re AtheroGenics Sec. Litig., 2006 WL 851708, *3 (S.D.N.Y. )

9

(internal quotations and citations omitted). In this case, all of the press releases and corporate filings, as well as the alleged misstatements, originated at Bausch & Lomb headquarters in Rochester. Plaintiffs do not demonstrate that any other forum has more substantive contacts with the facts underlying these cases, although it may be true that relevant facts may also be found in Brazil, Korea, and New York City for that matter. For these reasons, this factor favors transfer to the WDNY.

*3. Convenience of Parties*

Only two of the name plaintiffs reside in the SDNY. The majority of the individual defendants reside near or in Rochester and the Company is headquartered there also. Geisel Decl. ¶¶ 16 (a)-(e). There is no question that it would be more convenient for the Defendants to litigate the case in the forum in which they reside. Since few of the name plaintiffs live in the SDNY, it really does not matter to them whether its tried here, except perhaps for their lawyers. In fact, for the majority of the plaintiffs, they would have to travel to the forum state anyway, and the difference between a flight to New York City as compared to Rochester is hardly a cogent distinction.

As plaintiffs point out, it is true that it would not be a substantial burden for Defendants to litigate the case in the SDNY, given the proximity of the two Districts. However, plaintiffs failed to show that it is more convenient for them to litigate the case here. They simply opine that all the plaintiffs have expressed a preference to be here.

*4. Convenience of Witnesses*

This factor is arguably the most important in deciding transfer motions, and in this case, weighs in favor transfer. See <u>AEC One Stop Group, Inc. v. CD Listening Bar, Inc.</u>, 326 F.Supp.2d 525, 529 (S.D.N.Y. 2004) (internal citation omitted). This case involves, in large part, statements that were made in press releases issued by the Company. Thus, the key witnesses in this case will be those Bausch & Lomb employees that participated in creating and issuing these statements. Plaintiffs do not dispute that those individuals either are located at the Company headquarters in Rochester, NY or do not reside in New York State at all. Further, the Plaintiffs have not even identified any witnesses, or more importantly, any that reside in the SDNY. For these reasons, this factor favors transfer.

*5. Location of Documents and Ease of Access to Sources of Proof*

Defendants argue that this factor favors transfer because the majority of relevant documents, if stored in New York State, will be found in Rochester. While doubtless true, given

the relative ease with which documents can be transported today, I find that this factor is neutral.

*6. Relative Means of the Parties*

Neither party argues that their financial situation would affect their ability to conduct this trial in either forum, thus this factor is neutral.

*7. Forum's Familiarity with the Governing Law*

Since all of these cases are brought pursuant to federal law and Defendants seek transfer from one federal court to another, this factor must also be assessed neutral.

*8. Trial Efficiency and the Interests of Justice*

Plaintiffs argue that a comparison of the dockets of SDNY and WDNY judges, 689 and 786 cases respectively, favor keeping the case here. See, e.g. AtheroGenics Sec. Litig., 2006 WL 851708, *5 (S.D.N.Y. Mar. 31, 2006) (internal citation omitted) (according docket congestion weight in transfer analysis). However, in the alternative, Defendants compare the median time for civil cases to move from filing to disposition in the SDNY and the WDNY, 8.8 months and 10.2 months respectively. While these statistics may well be true, they do not mean much, but for the sake of argument, I'll credit them and call it a draw.

But, as mentioned at the outset, trial efficiency and the interests of justice militate in favor of trying these cases together. Therefore, if venue is not proper in the SDNY with regard to one case, judicial economy would favor transferring all of the cases.

Although raised at the eleventh hour in their reply papers,[3] Defendants argue, with regard to the two derivative securities actions, that venue is not proper in the SDNY. Although for our purposes here it not necessary to decide this matter, it is an open question, to say the least, whether plaintiffs allege enough contacts with the SDNY to vest venue here pursuant to 28 U.S.C. § 1391. This provision provides, in relevant part, that:[4]

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b)(2). In other words, plaintiffs in the derivative actions must allege that a substantial portion of the events with regard to the alleged misstatements occurred in the SDNY.

---

[3] Defendants, rather than providing plaintiffs with notice of this argument before opposition papers were due – they had a week after the pre-trial conference to do this – instead elected to raise this novel argument in their reply.

[4] Neither side argues that any other section of 28 U.S.C. § 1391 would be applicable.

11

Since I am skeptical that the derivative plaintiffs in fact do this, I find that this factor also favors transfer.

### IV. CONCLUSION

On balance, since convenience as well as the interest of justice favor transfer of this matter to the Western District of New York, this motion to transfer venue for all of these cases is granted. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**June 5, 2006**

_____
U.S.D.J.